ELIZABETH HOLT ET AL. v. S. B. ZIGLAR.

(Filed 1 May, 1912.)

1. Wills—Caveat—Infants—Adverse Interests—Consent Judgment—Process.

Where, in proceedings to caveat a will, the interests of minor children are involved, who are not properly represented, the issue of *devisavit vel non* cannot be answered by consent of the parties to the action so as to bind the infants.

2. Wills — Caveat — Infants — Adverse Interests—Representation—Process.

Infants taking under a will are not properly made parties to proceedings to caveat the will, who have been served with summons after the commencement of the term, only two days before the trial.

3. Same—Consent Judgment—Fraud and Collusion—Questions of Law.

When it appears in proceedings to caveat a will that the parents of infants, who held an adverse interest to them, were appointed guardians *ad litem*, and who with their attorney and by their pleadings and testimony consented to an answer to the issue of *devisavit vel non* in their own favor, the decree accordingly rendered in an interval between the trial of criminal cases at the term is collusive and fraudulent as to the infants, and cannot bind them.

4. Wills — Caveat — Guardian Ad Litem — Adverse Interests—Disqualification.

A guardian *ad litem* must have no interests adversary to those of his ward, and his attorney must be equally disinterested.

5. Wills—Caveat—Infants—Adverse Interests—Guardian Ad Litem —Disqualifications — Fraud and Collusion — Interests Unprejudiced.

A testator devised two-thirds of his lands to be equally divided between certain children of his two daughters and his son. At the death of his wife, the third thereof, which was devised to her for life, was to be divided share and share alike between the son and the grandchildren named: *Held,* (1) the interests of the daughters and son of the testator were adversary to those of the grandchildren, and their consent to an answer in the negative to an issue of *devisavit vel non* in proceedings to caveat the will was collusive and fraudulent as to the grandchildren, who were not properly made parties or legally

represented; (2) the only issue being as to collusion and fraud, the question as to whether the infants interested would be prejudiced by the judgment entered does not arise for consideration.

APPEAL from *Lyon, J.,* at November Term, 1911, of ROCKINGHAM.

Civil action. Fourteen issues were submitted to the jury by his Honor, but as the finding of the jury in response to the first issue is determinative of the action, it is necessary to set out only that issue, to wit:

1. Was the judgment setting aside the will of Valentine Allen obtained by collusion between Samuel A. Allen, J. Ham Cardwell, and S. B. Ziglar, for the purpose of vesting the title to the lands conveyed in the will of Valentine Allen in their respective wives, and divesting the children of the said respective wives of their interest in said land under the provisions of said will? Answer: No.

In response to a second issue by consent, the facts were found by the court, and his Honor found them as follows:

An unsigned paper was filed in the clerk's office, in the form of a caveat to the will of Valentine Allen, and on 20 October, 1885, the clerk issued a citation to the heirs and devisees of said Allen, notifying them to appear at the November Term, 1885, of the Superior Court, which begun on 9 November, 1885.

This citation was served on some of the heirs on 9 November, 1885, and on the others on 11 November, 1885; and on 12 November, 1885, guardians *ad litem* were appointed for the infant defendants, and they filed answer admitting the allegations of the complaint.

There was a motion for a new trial. The motion was overruled. There was judgment that the defendants go without day. The plaintiff excepted and appealed.

*Watson, Buxton & Watson, and C. O. McMichael for plaintiff.*

*Humphreys & Sharp, Manly, Hendren & Womble for defendants.*

BROWN, J. A paper-writing purporting to be the last will and testament of Valentine Allen was duly admitted to pro-

bate in common form by the clerk of the Superior Court of the county of Rockingham in 1885. A paper-writing, undated, purporting to be a caveat to said will was filed in the office of the said clerk during said year, and on 20 October, 1885, notices were issued by the clerk direct to Elizabeth A. Allen *et al.,* devisees under the said will, and an issue of *devisavit vel non* was made up and certified for trial to the regular term of the Superior Court of said county on 9 November, 1885. At said term it appears that the issue was submitted to the jury in the following form:

Is the paper-writing propounded for probate the last will and testament of Valentine Allen? Answer: No.

Whereupon the usual decree was entered, denying probate to the said paper-writing, and declaring it not to be the last will of Valentine Allen.

This action is brought by the plaintiffs, a granddaughter and a great-grandson of Valentine Allen, against a son, a married daughter, and certain grandchildren of Valentine Allen, for the purpose of setting aside the aforesaid decree upon the ground of fraud and collusion between the adversary parties to the record of the suit in which said decree was rendered.

In the consideration of this appeal we deem it necessary to consider only one assignment of error.

In apt time the plaintiff's counsel offered the following special instructions:

(The trial of the Allen suit was had on 11 November, 1885, being Wednesday of the first week.)

1. If the jury find from the evidence that prior to November Term, 1885, of the Superior Court of Rockingham County, that the last will and testament of Valentine Allen was probated and proved in common form before the Clerk of the Superior Court of Rockingham County, and was duly admitted to record by the examination on oath of the subscribing witnesses thereto, and that under the provisions of said will the lands belonging to the estate of the said Valentine Allen were devised to the minor children of Margaret J. Ziglar and S. B. Ziglar, and to the minor children of Ellen Cardwell and J. Ham Cardwell, and that Samuel A. Allen, the son of Valentine Allen, was only

willed a grandchild's share; and the jury further find from the evidence that at said term of court a proceeding was instituted in the name of Samuel A. Allen, as plaintiff, v. Margaret J. Ziglar and her husband, S. B. Ziglar, and Ellen Cardwell and her husband, J. Ham Cardwell, and the minor children of Margaret J. Ziglar and Ellen Cardwell, defendants, for the purpose of setting aside the will of Valentine Allen; and that a citation issued which was served upon the minor children of Margaret Ziglar by John Boyer, Sheriff of Forsyth County, by reading the summons to them on 11 November, 1885, two days after the beginning of said November term of court of Rockingham County, and which was also served upon the minor children of Ellen Cardwell by reading the same to them on 9 November, 1885, the first day of said November term of court; and they further find that the bond for cost in the said proceeding purporting to have been given by Samuel A. Allen was signed by. S. B. Ziglar, one of the defendants, as surety for the maintenance of said action; and if the jury further find from the evidence that the written motion in the handwriting of counsel of record for the defendants S. B. Ziglar and J. Ham Cardwell in said proceedings was made to appoint S. B. Ziglar and J. Ham Cardwell guardians *ad litem* for their minor children, and that said Ziglar and Cardwell were appointed by the court, such guardian *ad litem* of their respective children in the said proceedings, and that a joint answer was filed in the handwriting of counsel for defendants J. Ham Cardwell and his wife Ellen, S. B. Ziglar and his wife Margaret, and that S. B. Ziglar, J. Ham Cardwell, guardian *ad litem* for their respective minor children, in which said answer it was admitted that the said paper-writing probated as the last will and testament of Valentine Allen was not the last will and testament of Valentine Allen, and upon the back of said answer there appears in the handwriting of counsel for the plaintiff Samuel A. Allen the following: "12 November, 1885. We authorize the within answer to be filed both for ourselves and in our capacity as guardians *ad litem*. J. Ham Cardwell, S. B. Ziglar"; and if the jury find that a judgment was rendered at said November term of court to which the summons purporting to have been served upon the minor defendants

upon said action was returnable, and in which said judgment it was declared that the said paper-writing purporting to be the last will and testament of Valentine Allen was not his last will and testament, and adjudging that Samuel A. Allen, the plaintiff, should pay the cost of said proceeding: that if the jury find these to be the facts, the court holds that the said proceedings so far as the minor children of Margaret Ziglar and Ellen Cardwell are concerned, were collusive and a fraud in law upon the rights of the said minor children under the provisions of their grandfather's will, and if they find such to be the facts, the plaintiffs in this said action are entitled to have the judgment depriving them of their interest in said land granted at November term in 1885 of the Superior Court of Rockingham, in the case of Samuel A. Allen v. Margaret Ziglar and others, set aside, and the jury will answer the first issue "Yes."

The court declined to give the instruction, except as modified as follows: That if the jury find these to be the facts, the court *charges you that you may consider these facts in passing upon the question of fraud and collusion between S. A. Allen and J. Ham Cardwell and S. B. Ziglar in obtaining the judgment at Fall Term, 1885, setting aside the will of Valentine Allen.*

We think the court erred in adding the modification. The plaintiffs were entitled to the prayer as asked. The record disclosed that there is abundant evidence to substantiate every fact set out in the prayer for instruction. In fact, there is practically no evidence to the contrary; and if these facts are taken to be true, they constitute legal fraud, fraud in law, which would entirely vitiate and destroy the force and effect of the decree setting aside the will of Valentine Allen.

Under that will the testator devised two-thirds of his landed estate to be equally divided between the children of his two daughters, Margaret Ziglar and Ellen Cardwell, and his son Samuel, and at the death of his wife, Elizabeth, the third which had been devised to her for life was to be divided share and share alike "between my son Samuel and my grandchildren, the heirs of the bodies of my two daughters, Margaret Ziglar and

Ellen Cardwell, and that portion given to his son Samuel was to be placed in the hands of a guardian."

It is ·patent that it was ·the manifest interest of Margaret Ziglar and Ellen Cardwell and of Samuel Allen to have this will set aside. They were heirs at law of the testator, and the children of Margaret Ziglar and Ellen Cardwell (these plaintiffs) were the principal beneficiaries under the will.

The evidence shows that the fathers of these children went deliberately to· work to have that will set aside and to consent in behalf of their children to the decree entered in the proceedings.

The policy of the law will not permit the last will and testament of a person to be set aside by consent. An issue of *devisavit vel non* is not such a proceeding as can be determined by the consent of the parties thereto where some of them, as in this case, are infant children. So careful is the law to give effect to the disposition of property that even the witnesses to the will are regarded as the witnesses of the law, and not the witnesses of any particular party.

The facts embodied in the prayer for instruction are scarcely denied, and show that the infant devisees were only served with notice after the term of court ·began when the issue was to be tried. This service was made on Monday, 11 November, when the court began on 9 November, and the case was "railroaded" through on Thursday, 14 November, during a temporary suspension of the criminal docket for the purpose of submitting this issue to a jury.

Under all our decisions the infant devisees were really not parties to the proceeding. *Doyle v. Brown,* 72 N. C., 393; *Condry v. Cheshire,* 88 N. C., 375; *Harrison v. Harrison,* 106 N. C., 282; *Card v. Finch,* 142 N. C., ·144-148; *Hughes v. Pritchard,* 153 N. C., 141. In this last case *Mr. Justice Manning* eloquently says:

"Infants are, in many cases, the wards of the courts, and these forms, enacted as safeguards thrown around the helpless, who are the victims of the crafty, are enforced as mandatory, and not directory only. Those who venture to act in defiance to them must take the risk of their action being declared void or set aside."

The evidence shows that the father of the Ziglar children became the surety of Samuel Allen, the caveator, on the bond for cost at the very time that he was appointed guardian *ad litem* to protect the rights of his children, the infant defendants, and further, that the father, Ziglar, paid the attorney's fee to represent him as defendant in the case which Ziglar was assisting in prosecuting by signing the cost bond. Ziglar and his brother-in-law, Cardwell, were each appointed guardian *ad litem* of his own children, and they filed a joint answer in their individual capacity representing their wives, and also as guardians of their minor children, although their interests were diametrically opposed.

It was quite like these faithful guardians to see to it that this joint answer admitted that the paper-writing was not the will of Valentine Allen, when by doing so they deprived their children and wards of all interest in more than 800 acres of land, which then, of course, descended to their wives in fee.

The evidence shows that the same counsel represented Ziglar and Cardwell and their wives in their individual capacity and also acted as their attorney as guardians of their children, whose interest, as we have shown, was opposed to that of their parents.

It requires no citation of authority to show that upon these facts the law must pronounce a decree rendered under such circumstances, without even the semblance of a trial, collusive and fraudulent as to the rights of the minor children.

It is another singular fact appearing in evidence that this will was written by a Dr. Scales and executed on 22 November, 1875, and the testator lived for ten years afterwards. Upon the so-called trial it was not contended that Samuel Allen had no capacity to make a will, but the only evidence offered bearing upon the execution of the will was that of Dr. Scales, who stated ten years after he had written the will that he did not think he had drawn the will as Valentine Allen wished it drawn, although, when the will was probated by the clerk, this same witness made no such declaration.

It is held that a guardian *ad litem* of infant defendants must be a person who has no adversary interests to his ward. *Ellis v. Massenburg,* 126 N. C., 129. In this case the Court says:

"The court has no higher duty than the protection of infant defendants, and there can be no trust more sacred than that of a guardian, who must be absolutely free from any interest or motive that can possibly interfere with the faithful perform-ance of his duties."

If he has any interest at all in the suit, it must be thoroughly consistent with that of his ward's.   Even his attorney must be equally disinterested, and a mere colorable interest is a sufficient disqualification for either if at all adverse.   *Moore v. Gidney,* 75 N. C., 34; *Molyneux v. Huey,* 81 N. C., 106-113; *Arring-ton v. Arrington,* 116 N. C., 170-179; *Cotton Mills v. Cotton Mills,* 116 N. C., 647-652.

Says the Court: "We think that this rule is analogous to that forbidding a trustee to deal with himself, which, founded upon natural justice and public policy, has become too firmly imbedded in our jurisprudence by repeated decisions to need citation of authorities."

In *Covington v. Covington,* 73 N. C., 172, *Judge Pearson* comments with some severity upon a guardian who makes use of the name of his ward to maintain a proceeding directly op-posed to the interest of his ward and for his own benefit.   In *Morris v. Gentry,* 89 N. C., 248, it was held that no person should be selected as guardian *ad litem* unless he is in position to protect the rights of the infants, and has no adverse in-terests.

The learned counsel for the defendant submitted an elaborate argument that Samuel Allen and the other devisees would take *per stirpes* and not per capita, and, therefore, that no injustice was done by setting aside the testator's will, although the pro-ceeding was collusive and fraudulent in law.

It is not necessary to determine as to what share Samuel Allen would take under his father's will until that will is estab-lished and probated according to law.   The only issue raised by the pleadings in this case is one of fraud and collusion in respect to the manner in which that will was set at naught.

We are of opinion that the court should have given the prayer for instruction in the manner and form as requested.

New trial.